UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**MICHELLE D. DELL,**

        **Plaintiff,**                     CIVIL ACTION NO. 16-cv-11308

        v.                               DISTRICT JUDGE STEPHEN J. MURPHY, III

**COMMISSIONER OF**             MAGISTRATE JUDGE MONA K. MAJZOUB
**SOCIAL SECURITY,**

        **Defendant.**

_____/

**REPORT AND RECOMMENDATION**

      Plaintiff Michelle D. Dell seeks judicial review of Defendant Commissioner of Social Security's determination that she is not entitled to social security benefits for her physical and mental impairments under 42 U.S.C. § 405(g). (Docket no. 1.) Before the Court are Plaintiff's Motion for Summary Judgment (docket no. 18) and Defendant's Motion for Summary Judgment (docket no. 24). The motions have been referred to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (Docket no. 3.) The Court has reviewed the pleadings, dispenses with a hearing pursuant to Eastern District of Michigan Local Rule 7.1(f)(2), and issues this Report and Recommendation.

**I.    RECOMMENDATION**

      For the reasons that follow, it is recommended that Plaintiff's Motion for Summary Judgment (docket no. 18) be **DENIED** and Defendant's Motion for Summary Judgment (docket no. 24) be **GRANTED**.

## II. PROCEDURAL HISTORY

Plaintiff protectively filed applications for a period of disability, disability insurance benefits, and supplemental security income on February 27, 2012, alleging that she has been disabled since June 17, 2011, due to lupus, heart disease, depression, memory loss, and ulcers. (TR 309-21, 344, 347.) The Social Security Administration denied Plaintiff's claims on July 10, 2012, and Plaintiff requested a *de novo* hearing. (TR 121-48, 190-91.) On April 9, 2013, Plaintiff appeared with a representative and testified at the hearing before Administrative Law Judge (ALJ) Michael F. Wilenkin. (TR 35-75.) In a June 3, 2013 decision, the ALJ found that Plaintiff had the residual functional capacity (RFC) to perform a limited range of sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a) and was not entitled to benefits because she was capable of performing a significant number of jobs in the national economy. (TR 152-69.) The Appeals Council reviewed and vacated ALJ Wilenkin's decision on the bases that he did not adequately analyze the opinions of Nagy Kheir, M.D., Janaina Matteussi, M.D., and Franklin Sollars, Ph.D., and the hearing decision did not contain an evaluation of the non-examining source opinions of Daniel Blake, Ph.D. and Muhammad Khalid, M.D., among other things. (TR 175-76.) The Appeals Council therefore remanded Plaintiff's case to an ALJ with instructions to evaluate and explain the weight given to the medical opinions in accordance with the Social Security Regulations and Rulings. (TR 176.)

On remand, Plaintiff appeared with a representative and testified at a hearing before ALJ Andrew G. Sloss on April 17, 2015. (TR 76-95.) In a May 12, 2015 decision, the ALJ found that Plaintiff was not entitled to benefits because she was capable of performing a significant number of jobs in the national economy. (TR 11-28.) The Appeals Council declined to review

the ALJ's decision (TR 1-3), and Plaintiff commenced this action for judicial review. The parties then filed cross motions for summary judgment, which are currently before the Court.

### III. HEARING TESTIMONY AND MEDICAL EVIDENCE

Plaintiff (docket no. 18 at 9-19) and the ALJ (TR 16-24) have set forth detailed, factual summaries of Plaintiff's medical record. Defendant incorporated the ALJ's factual summary by reference into her brief. (Docket no. 24 at 4.) Having conducted an independent review of Plaintiff's medical record and the hearing transcript, the undersigned finds that there are no material inconsistencies among these recitations of the record. Therefore, in lieu of re-summarizing this information, the undersigned will incorporate the above-cited factual recitations by reference and will also make references and citations to the record as necessary to address the parties' arguments throughout this Report and Recommendation.

### IV. ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of June 17, 2011, and that Plaintiff suffered from the following severe impairments: systemic lupus erythematosus (SLE), an adjustment disorder with depression and anxious mood, dysthymic disorder, and a substance use disorder in remission. (TR 14.) Additionally, the ALJ found that Plaintiff's impairments did not meet or medically equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (TR 14-15.) The ALJ then found that Plaintiff had the following RFC:

> [C]laimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can occasionally climb ramps or stairs and balance. Her psychological symptoms limit her to simple, routine tasks in work that involves only occasional interaction with supervisors.

3

(TR 15-27.) Subsequently, in reliance on the vocational expert's (VE's) testimony, the ALJ determined that Plaintiff was capable of performing a significant number of jobs in the national economy. (TR 27-28.) Therefore, the ALJ found that Plaintiff was not disabled under the Social Security Act at any time from June 17, 2011, through the date of the decision. (TR 12, 28.)

## V.     LAW AND ANALYSIS

### A.     Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions. Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528. It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *See Her v. Comm'r*, 203 F.3d 388,

389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts"). "But '[a]n ALJ's failure to follow agency rules and regulations denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record.'" *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 374 (6th Cir. 2013) (quoting *Cole v. Astrue,* 661 F.3d 931, 937 (6th Cir. 2011)).

### B. Framework for Social Security Determinations

Plaintiff's Social Security disability determination was made in accordance with a five-step sequential analysis. In the first four steps, Plaintiff was required to show that:

(1) Plaintiff was not presently engaged in substantial gainful employment; and

(2) Plaintiff suffered from a severe impairment; and

(3) the impairment met or was medically equal to a "listed impairment;" or

(4) Plaintiff did not have the residual functional capacity (RFC) to perform relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(f). If Plaintiff's impairments prevented Plaintiff from doing past work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education, and past work experience to determine if Plaintiff could perform other work. If not, Plaintiff would be deemed disabled. *See id.* at § 404.1520(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health and Human Servs.,* 820 F.2d 777, 779 (6th Cir.

1987).  This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'"  *Id.* (citations omitted).

### C. Analysis

The Social Security Act authorizes "two types of remand: (1) a post judgment remand in conjunction with a decision affirming, modifying, or reversing a decision of the [Commissioner] (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the [Commissioner] (a sentence-six remand)."  *Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994) (citing 42 U.S.C. § 405(g)).  Under a sentence-four remand, the Court has the authority to "enter upon the pleadings and transcript of the record, a judgment affirming, denying, or reversing the decision of the [Commissioner], with or without remanding the cause for a hearing.  42 U.S.C. § 405(g).  Where there is insufficient support for the ALJ's findings, "the appropriate remedy is reversal and a sentence-four remand for further consideration."  *Morgan v. Astrue*, 10-207, 2011 WL 2292305, at *8 (E.D. Ky. June 8, 2011) (citing *Faucher*, 17 F.3d at 174).

Plaintiff asserts that this matter should be reversed and/or remanded under sentence four because (1) "[t]he Administrative Law Judge erred in his Step 2 severity finding;" and (2) "[t]he ALJ failed to follow the Appeals Council's order regarding the weight to be given to physicians' opinions."  (Docket no. 18 at 20-32.)

#### 1. The ALJ's Step-Two Determination

Plaintiff argues that the ALJ erred by not finding her gastroesophageal reflux disease (GERD), cardiac problems, hypertension, peptic ulcer disease, or bipolar disorder to be severe impairments.  (Docket no. 18 at 20-24.)  A severe impairment or combination of impairments is

6

one that significantly limits the claimant's physical or mental ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment will be considered non-severe only if it is a "slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education and work experience." *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 90 (6th Cir. 1985) (citation omitted). But the step-two severity analysis is simply a threshold determination. It is well established that "once any one impairment is found to be severe, the ALJ must consider both severe and nonsevere impairments in the subsequent steps," and it becomes "legally irrelevant" that other impairments are not considered severe. *McGlothin v. Comm'r of Soc. Sec.*, 299 F. App'x 516, 522 (6th Cir. 2008) (citing *Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008)). This is so because the second step is designed simply to screen out and dispose of baseless claims. *Anthony*, 266 F. App'x at 457. Stated differently, as long as the ALJ considers all of a claimant's impairments in the remaining steps of the disability determination, the ALJ's failure to find additional severe impairments at step two does not constitute reversible error. *See Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987).

Here, in assessing Plaintiff's impairments at Step Two of the sequential evaluation process, the ALJ determined that Plaintiff suffered from the severe impairments of systemic lupus erythematosus (SLE), adjustment disorder with depression and anxious mood, dysthymic disorder, and a substance use disorder in remission. (TR 14.) The ALJ also found that Plaintiff suffered from non-severe impairments:

> The claimant had also treated for hypertension that was stable with medication, [] gastroesophageal reflux disease (GERD) that was only intermittent and controlled with medication. Claimant had been advised twice to follow-up with her gastroenterologist and the claimant did not make any appointments or no evaluations were submitted to the record. The claimant was treated for Grave's disease but had not needed any monitoring or follow-up for this condition. The

> claimant had also intermittently treated for asthma/bronchitis that had remained relatively stable. The claimant had not been treated or followed by a pulmonologist and remained controlled with antibiotics and albuterol. The claimant had no emergency services or hospitalizations for this condition. [T]he undersigned finds that the above medical conditions are non-severe impairments.

(TR 14.) The ALJ then evaluated Plaintiff's mental impairments at Step Three of the sequential evaluation process under Listings 12.04 (which includes bipolar disorder), 12.06, and 12.09, and he determined that her impairments did not satisfy the requirements of those Listings. (TR 14-15.)

Additionally, the ALJ considered and discussed Plaintiff's GERD, cardiac problems, hypertension, peptic ulcer disease, and bipolar disorder throughout his assessment of Plaintiff's RFC. For example, the ALJ noted that from May 2011 to October 2012, Plaintiff was treated for hypertension and GERD, among other things, and in September 2011, Plaintiff was referred to a gastroenterologist due to heartburn and chest pain. (TR 18.) The ALJ considered that in January 2012, Plaintiff was treated for peptic ulcer disease and GERD, for which she was taking Omeprazole. (TR 18.) The ALJ also considered that on August 4, 2012, Dr. H. Patel diagnosed Plaintiff with bipolar disorder, and on October 23, 2012, Dr. Kheir reported a diagnosis of bipolar disorder in a medical source statement. (TR 20.) Additionally, the ALJ noted that Plaintiff had a history of treatment for possible cardiac arrhythmia, and he discussed the results of Plaintiff's March 18, 2013 echocardiogram, which revealed that she had an ejection fraction of 65%; stress test, which was negative for ischemia; and Holter Monitor placement, which showed that Plaintiff had predominately a sinus rhythm, but had some tachycardia, and no ventricular ectopy, rare atrial ectopy, and no AV block. (TR 16, 23.) The immediate discussion demonstrates that the ALJ properly considered Plaintiff's GERD, cardiac problems,

hypertension, peptic ulcer disease, and bipolar disorder at the remaining steps of the sequential evaluation process. Accordingly, under *Maziarz*, Plaintiff's Step-Two challenge fails.

### 2. *The ALJ's Assessment of the Medical Opinion Evidence*

Plaintiff contends that "[t]he ALJ failed to follow the Appeals Council's order regarding the weight to be given to physicians' opinions." (Docket no. 18 at 24.) But as Defendant points out, the extent to which the ALJ complied with the remand order of the Appeals Council is not reviewable by this Court under 42 U.S.C. § 405(g), as the remand order is not a final decision of the Commissioner. *See Peterson v. Comm'r of Soc. Sec.*, No. 09-11222, 2010 WL 420000, at *7 (E.D. Mich. Jan. 29, 2010) ("Since the district court does not review internal agency-level proceedings, it will not address whether the ALJ complied with the specific provisions of the Appeals Council's order of remand.") (citations and internal quotation marks omitted). Accordingly, Plaintiff's argument that the ALJ failed to follow the Appeals Council's remand order will not be considered. The Court will, however, address Plaintiff's challenges to the ALJ's assessments of the opinions of her treating psychiatrist, Nagy Kheir, M.D., her treating primary care physician Janaina Matteussi, M.D., and consultative examiner Franklin Sollars, Ph.D. below.

#### a. <u>Nagy Kheir, M.D.</u>

Plaintiff argues that the ALJ erroneously rejected Dr. Kheir's Medical Source Statement by stating that it was "not consistent with the claimant's clinical progress notes as the claimant had improved with her medications with a reduction in her symptoms." (Docket no. 18 at 25 (citing TR 20).) In fact, the ALJ rejected only a portion of Dr. Kheir's opinion on this basis. The relevant part of the ALJ's decision provides:

> Dr. Kheir also stated that the claimant due to her impairments would be absent from work more than three times per month. This was not consistent with the

9

>claimant's clinical progress notes as the claimant had improved with her medications with a reduction in her symptoms.

(TR 20.)

Plaintiff argues that the ALJ's statement seems to be contradicted by the record and cites portions of Dr. Kheir's treatment notes that describe Plaintiff as unstable and depressed. (*Id.* (citing TR 553, 566, 583-89).) In response, Defendant cites to portions of Dr. Kheir's treatment notes that support the ALJ's statement. (Docket no. 24 at 14.) For example, on September 25, 2012, Dr. Kheir noted that Plaintiff's status was improving (TR 560), and on November 27, 2012, Dr. Kheir noted that Plaintiff was taking her medication and that she was stable (TR 590, 595). Thus, while there is indeed evidence that tends to support Plaintiff's assertions, there is also substantial evidence supporting the ALJ's statement. This issue therefore falls within the ALJ's zone of choice, and there is no error here. *See Mullen v. Bowen, supra.*

The ALJ discussed Dr. Kheir's medical source statement at length in his decision, assigned it little weight on the basis that the medical evidence of record did not support the extremely restrictive mental limitations assessed by Dr. Kheir, and described and cited to specific examples of the inconsistencies between Dr. Kheir's opinion and the record evidence. (TR 20-21, 26.) Accordingly, the undersigned finds that the ALJ provided good reasons for assigning little weight to Dr. Kheir's opinion, which are supported by the evidence of record and are sufficiently specific to clarify the reasons for that weight. Plaintiff's Motion should be denied with regard to this issue.

### b. Janaina Matteussi, M.D.

On March 13, 2013, Dr. Matteussi completed a Residual Functional Capacity Questionnaire regarding Plaintiff's impairment of systemic lupus erythematosus (SLE). (TR

615-21.) In this questionnaire, Dr. Matteussi indicated that Plaintiff fulfilled the diagnostic criteria of SLE by exhibiting the requisite number of signs and symptoms of the disease, such as malar rash, photosensitivity, oral ulcers, non-erosive arthritis, gastrointestinal issues, severe fatigue, severe malaise, muscle weakness, frequent and persistent infections, Raynaud's phenomenon, and migraine headaches. (TR 615-16.) Dr. Matteussi then opined that Plaintiff's SLE symptoms were frequently severe enough to interfere with her attention and concentration, and that she was incapable of performing even "low stress" jobs due to memory loss, anxiety, and fatigue. (TR 617.) Dr. Matteussi also found that Plaintiff has several functional limitations due to her SLE. (TR 617-20.) For example, Dr. Matteussi opined that Plaintiff can walk one city block without rest, can sit for only one hour at a time, and can stand for only thirty minutes at a time. (TR 617-18.) In response to a question regarding how long Plaintiff could sit and stand/walk total in an eight-hour workday, Dr. Matteussi wrote "N/A." (TR 618.) Dr. Matteussi also opined that Plaintiff can never lift and carry any weight in a competitive work situation and that she can occasionally reach, rarely stoop or bend, and never crouch or climb ladders or stairs. (TR 619.)

> The ALJ assessed Dr. Matteussi's opinion as follows:
>
> [T]he undersigned gives little weight to Dr. J. Matteussi's opinion (Exhibit B14F). Dr. Matteussi stated that the claimant had the inability to sit, stand, or walk at all. [S]he further stated that the claimant could not lift any weight (not even a pencil?). There was no objective signs or findings of any serious physical condition that would justify this very limited medical source statement.

(TR 26.) The ALJ also discussed Dr. Matteussi's records and opinion at another points in his decision, in relevant part:

> The claimant's primary care physician diagnosed the claimant with SLE, but there were no objective signs or findings. Furthermore, there were no objective signs or findings of any physical condition and no corroboration of her allegations of severe fatigue. The medical evidence of record does not support the medical

11

>     source statements of the treating physicians (with one of them giving her a marked limitation with "no lifting at all").

(TR 24.)

While not explicitly stated, Plaintiff argues that the ALJ's reason for discounting Dr. Matteussi's opinion, that there were "no objective signs or findings of any physical condition and no corroboration of her allegations of severe fatigue," is incorrect. (Docket no. 18 at 26.) Plaintiff asserts that Dr. Matteussi documented the objective findings of her SLE by answering question four of the RFC Questionnaire, which asked her to "[i]dentify any clinical findings, laboratory and test results, symptoms and positive objective signs of your patient's impairment (or adverse effects of treatments)." (*Id*. at 27-28; TR 615.) As noted above, in response to this question, Dr. Matteussi checked boxes next to items such as malar rash, photosensitivity, oral ulcers, non-erosive arthritis, gastrointestinal issues, severe fatigue, severe malaise, muscle weakness, frequent and persistent infections, Raynaud's phenomenon, and migraine headaches. (TR 615-16.) Plaintiff also asserts that there is other significant record evidence that reflects "the various known symptoms of lupus, which [Plaintiff] experiences." (*Id*. at 28.) Plaintiff then lists several symptoms and cites the corresponding pages of the record where references to those symptoms can be found. (*Id*.)

Defendant argues that Plaintiff has failed to rebut the ALJ's statement that there were "no objective signs or findings of any physical condition," pointing out that much of the evidence that Plaintiff cited to support her argument, *supra*, comes from her hearing testimony, the third-party function report, or the medical source statements themselves. (Docket no. 24 at 19-20.) Defendant is correct. The undersigned has reviewed the records cited by Plaintiff and has determined that most, if not all, of the records reflect either Plaintiff's subjective complaints or

the opinions of Plaintiff's healthcare providers, neither of which constitute objective evidence. Notably, Dr. Matteussi's response to question four in the RFC questionnaire represents her subjective medical opinion regarding the signs and symptoms of Plaintiff's SLE, and neither Dr. Matteussi nor Plaintiff refer to or cite any objective evidence to support it. Accordingly, the ALJ did not err in discounting Dr. Matteussi's opinion on the basis that there were "no objective signs or findings of any physical condition." Plaintiff's argument fails in this regard.

Although not relative to Dr. Matteussi's opinion, Plaintiff also argues in this section of her brief that the ALJ incorrectly stated that her 24-hour Holter Monitor test "showed no events." (Docket no. 18 at 26 (citing TR 24).) Plaintiff argues that the test results show that she spent a total of 2 hour and 49 minutes in tachycardia and had very rare atrial ectopy, which consisted of a total of 8 PACs over the monitoring period. (*Id.* (citing TR 665).) While this may be true, the test results also reveal that Plaintiff experienced zero ventricular events, eight supraventricular events (which represented less than 1% of the total beat count), and zero events related to ST depression or ST elevation. (TR 663-64.) The ALJ was therefore not necessarily incorrect by stating that the Holter Monitor test "showed no events." But to the extent that he did err by overlooking the eight supraventricular events, the undersigned does not find such a minimal error to be a fundamental mischaracterization of the evidence sufficient to warrant remand of this matter, particularly in light of the fact that Dr. Matteussi, the referring physician, did not directly assess any functional limitations to Plaintiff as a result of this test.

Plaintiff further argues that ALJ violated the treating physician rule in assessing Dr. Matteussi's opinion because he did not consider the "length of treatment" regulatory factor or the fact that the providers at Dr. Matteussi's clinic, Shores Primary Care, "were the 'quarterbacks' of [Plaintiff's] medication regimen, examinations and referrals to other specialists." (Docket no. 18

13

at 29.) Although the ALJ did not explicitly discuss these two items in the paragraph in which he assigned little weight to Dr. Matteussi's opinion, the ALJ did substantively discuss the length of Plaintiff's treatment relationship with Dr. Matteussi and Shores Primary Care throughout his decision. (*See* TR 17, 18, 19, 23, 24.) The ALJ also referenced the fact that Dr. Matteussi and/or Shores Primary Care referred her for psychiatric care and pain management as well as to a gastroenterologist and a rheumatologist. (*See* TR 24, 25.) Accordingly, there is no error here. The court should therefore deny Plaintiff's Motion with regard to the ALJ's assessment of Dr. Matteussi's opinion.

        c.        Franklin Sollars, Ph.D.

Plaintiff argues that the ALJ erred by assigning "little weight" to Dr. Sollars's opinion regarding Plaintiff's mental limitations, while giving "great weight" to the opinion of Dr. Patricia Madej, Ph.D. (Docket no. 18 at 29.) Plaintiff argues that although both doctors performed single, consultative evaluations of Plaintiff, the ALJ should have accorded more weight to Dr. Sollars's opinion because he administered certain tests to Plaintiff, while Dr. Madej did not, and because Dr. Sollars's more comprehensive opinion is consistent with Dr. Kheir's opinion regarding Plaintiff's functional limitations. (*Id.* at 29-30.) "However, the ALJ has the right to resolve conflicting respectable medical opinions." *Morreale v. Heckler*, 595 F. Supp. 907, 910 (E.D. Mich. 1984) (citing *LeMaster v. Weinberger,* 533 F.2d 337, 349 (6th Cir. 1976); *Halsey v. Richardson,* 441 F.2d 1230 (6th Cir. 1971)). *See also Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001) (It is not the court's role to resolve conflicting evidence in the record.). Furthermore, as discussed above, the ALJ assessed little weight to Dr. Kheir's opinion because he found it to be inconsistent with the record, and the ALJ's decision in that regard is supported by substantial evidence. Thus, to the extent that Dr. Sollars's opinion is consistent with Dr. Kheir's opinion as

Plaintiff asserts, it is only proper that the ALJ assigned the same amount of "little weight" to Dr. Sollars's opinion as he did to Dr. Kheir's opinion. Plaintiff's Motion should therefore be denied with regard to this issue.

### d. Daniel Blake, Ph.D

Plaintiff argues that in giving great weight to Dr. Blake's opinion, the ALJ incorrectly stated that Dr. Blake had opined that Plaintiff had only mild limitations in socialization, when Dr. Blake actually stated that Plaintiff was moderately limited in social interaction. (Docket no. 18 at 30.) In fact, when considering Plaintiff's impairments at Step Three of the sequential evaluation process, Dr. Blake found that Plaintiff had mild difficulties in maintaining social functioning. (TR 126.) Then in assessing Plaintiff's mental RFC, Dr. Blake found that Plaintiff does have social interaction limitations, some of which are not significantly limited, like her ability to interact with the general public or to ask simple questions or request assistance, while some, like her ability to accept instructions from supervisors, are moderately impaired. (TR 130.) Dr. Blake then concluded that Plaintiff's social/interpersonal relations were mild to moderately limited. (TR 130.) In light of the above, the ALJ's statement that Dr. Blake opined that Plaintiff had mild social limitations was not erroneous.

Plaintiff also argues that the ALJ erred by assigning great weight to both Dr. Blake's and Madej's opinions and that the ALJ played doctor and "created his own interpretation of what the two doctors opined" because their opinions are not necessarily consistent with one another. (Docket no. 18 at 30-31.) Plaintiff, however, does not further develop this argument. "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most

15

skeletal way, leaving the court to ... put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) (citation and internal quotation marks omitted).

Lastly, Plaintiff asserts that the ALJ erred by crediting the opinions of the state-agency medical and psychological consultants and consultative examiner Madej over the opinions of her treating physicians and consultative examiner Sollars because under the regulations, the opinion of an examining source is entitled to greater weight than a non-examining source, and the opinion of a treating physician should be given more weight than that of a one-time examining doctor. (Docket no. 18 at 31-32; 20 C.F.R. §§ 404.1527(c), 416.927(c).) While this is generally true, the Sixth Circuit has held that "[a]n administrative law judge may give more weight to the opinions of examining or consultative sources where the treating physician's opinion is not well-supported by the objective medical records." *Dyer v. Soc. Sec. Admin.*, 568 F. App'x 422, 428 (6th Cir. 2014) (citing *Gayheart* at 379–80). As discussed above, the ALJ's decision to discount the opinions of Plaintiff's treating sources on the basis that they are inconsistent with the record evidence, among other things, is supported by substantial evidence. Accordingly, the ALJ did not err in adopting the opinions of the state-agency consultants in this matter.

## VI. CONCLUSION

For the reasons stated herein, the court should **DENY** Plaintiff's Motion for Summary Judgment (docket no. 18) and **GRANT** Defendant's Motion for Summary Judgment (docket no. 24).

## REVIEW OF REPORT AND RECOMMENDATION

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen (14) days of service of a copy hereof as provided

for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: June 12, 2017         s/ Mona K. Majzoub
                             MONA K. MAJZOUB
                             UNITED STATES MAGISTRATE JUDGE


**PROOF OF SERVICE**

I hereby certify that a copy of this Report and Recommendation was served upon counsel of record on this date.

Dated: June 12, 2017         s/ Lisa C. Bartlett
                             Case Manager